IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 25-cv-02244-GPG-TPO

MARIO RAXON,

    Plaintiff,

v.

MOSES STANCIL, AMANDA RETTING,
JUSTIN ENSINGER, AND XAVIERA TURNER,

    Defendants.

## DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT (ECF NO. 9)

Defendants Stancil, Retting, Ensinger, and Turner, through the Colorado Attorney General, respectfully submit this Motion to Dismiss Plaintiff's Second Amended Complaint (ECF No. 9). In support thereof, Defendants state the following:

**Certificate of Conferral:** Plaintiff Mario Raxon is an unrepresented inmate, so counsel is not required to confer with him under D.C.COLO.LCivR 7.1(b)(1).

## STATEMENT OF THE CASE

Plaintiff Raxon is incarcerated in the Colorado Territorial Correctional Facility (CTCF), a prison operated by the Colorado Department of Corrections (CDOC). (ECF No. 9 at 2). His sentence arises from 2012 convictions for sexual assault and

kidnapping. See § 18-3-402(1)(a)(4); § 18-3-302(1); § 18-1.3-406(2)(a)(I)(A), C.R.S.[1] Pursuant to the Sex Offender Lifetime Supervision Act (SOLSA), § 18-1.3-1001, et seq., C.R.S., he is serving eighteen-years-to-life for sexual assault. (ECF No. 9 at ¶¶ 4-5).

Inmates sentenced under SOLSA serve indeterminate life sentences unless and until they are paroled. §§ 18-1.3-1004(1)-(2), 1006(1)(a), C.R.S. Before they can be considered for parole, such inmates must successfully progress in the Sex Offender Treatment and Monitoring Program (SOTMP) operated by CDOC. See § 18-1.3-1006. CDOC promulgated Administrative Regulation (AR) 700-19 to comply with its treatment obligations under SOLSA.[2] (ECF No. 9 at ¶ 13). AR 700-19(IV)(F)(1) provides that SOLSA inmates who are within four years of their parole eligibility date, meet program participation requirements, and need sex offense specific treatment are prioritized for admission to the SOTMP based on: (1) "Parole eligibility date"; (2) "Risk for sexual recidivism"; (3) "Prior SOTMP treatment opportunities"; (4) "Institutional behavior; and (5) "Ancillary treatment needs, e.g. mental health [and] substance use disorder[s]." Inmates waiting for admission to the SOTMP are managed via a Global Referral List (GRL). (ECF No. 9 at ¶ 13).

---

[1] The Court may take judicial notice of the state court docket in Raxon's criminal case, 12CR521. Stack v. McCotter, 79 F. App'x 383, 391 (10th Cir. 2003) (noting that federal courts may take judicial notice of official court records in related state cases).

[2] The most current version of all Administrative Regulations cited in this motion can be found on CDOC's website: https://cdoc.colorado.gov. The Court may take judicial notice of CDOC's regulations. Allen v. Clements, 930 F. Supp. 2d 1252, 1259 (D. Colo. 2013) ("State Administrative Regulations are subject to judicial notice.").

In this suit, Raxon alleged that CDOC deemed him ready for treatment in June 2023, and he was placed on the GRL. (*Id.* at ¶¶ 13-14). He asserted that he has "repeatedly and formally requested enrollment in CTCF's SOTMP" since that time, but "Defendants have **refused** to place him in SOTMP therapeutic treatment[,]" so he is serving a de facto life sentence. (*Id.* at 5 and ¶ 16). According to public records, Raxon became eligible for parole on November 16, 2025 (his PED).[3] He filed his Second Amended Complaint on August 14, 2025, approximately three months before his PED. (ECF No. 9 at 1). Thus, he appeared to allege that he was constitutionally entitled to admission to the SOTMP at least three months before his PED. He essentially contended that even if others on the GRL had earlier PEDs, fewer ancillary treatment needs, or lower recidivism risk, he should have been admitted before they were because he was eligible and asked for treatment. Relatedly, he asserted that he "formally requested through . . . AR 700-21, that the Defendants allow private (at his own expense) sex offender treatment through Tele-Health." (*Id.* at ¶ 17). However, according to Raxon, Defendants denied it contrary to their own regulations (AR 700-21) and the Sex Offender Management Board's (SOMB) standards. (*Id.* at ¶¶ 18-19).

Raxon asserted three claims pursuant to 42 U.S.C. § 1983 and requested monetary relief and an injunction ordering his immediate admission to the SOTMP. (*See generally* ECF No. 9). More specifically, he asserted (1) a procedural due process

---

[3] The Court may take judicial notice of Raxon's PED, as it is part of publicly available records that are not in dispute. *See Montgomery v. Hopper*, No. 24-cv-00228-NYW-MDB, 2024 WL 3634913, at *1 n.3 (D. Colo. May 22, 2024).

claim; (2) a substantive due process claim; and an (3) Eighth Amendment claim for deprivation of medical care, i.e. sex-offender treatment. (*Id.*). For multiple reasons, he did not state any cognizable claims for relief.

First and foremost, he failed to plausibly allege that he has a liberty interest in immediate admission to the SOTMP. Second, he failed to state a procedural due process claim because he did not identify any procedures that were due but not followed. Third, his substantive due process claim fails because he did not allege facts to support an inference that he was totally deprived of treatment. Fourth, his Eighth Amendment claim fails because he simply alleged that he is on the GRL, but he has not yet been admitted to the SOTMP. Mere delay does not support an inference that he faces a risk of serious harm due to deliberate indifference. Finally, Defendants are entitled to qualified immunity in their individual capacities.

## STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure states that a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To avoid dismissal, a complaint must contain factual allegations that – when taken as true – establish a claim for relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility requires more than mere conceivability. *See Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012). Complaints must contain either direct or inferential factual allegations relevant to all the material elements necessary to sustain recovery under an identifiable legal theory. *Allen*

*v. Clements*, 930 F. Supp. 2d 1252, 1259 (D. Colo. 2013) (citing *Bryson v. Gonzales*, 534 F. 3d 1282, 1286 (10th Cir. 2008).

When resolving a Rule 12(b)(6) dismissal motion, a court should construe the allegations in the light most favorable to the plaintiff. *See Sec. & Exch. Comm'n v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014). However, pure legal conclusions are not afforded such deference. *See Dahn v. Amedei*, 867 F.3d 1178, 1185 (10th Cir. 2017).

## ARGUMENT

### I. Raxon does not have a protected liberty interest in immediate placement in sex-offender treatment.

As a threshold matter, to state a due process claim under the Fourteenth Amendment, a plaintiff must assert that a state actor infringed on a protected liberty interest. *Fristoe v. Thompson*, 144 F.3d 627, 630 (10th Cir. 1988). A protected liberty interest can arise from state or federal law, but it must arise from a legitimate claim of entitlement and not from an inmate's unilateral expectation that he will receive a benefit. *Allen*, 930 F. Supp. 2d at 1264 (quotations omitted).

No federally created liberty interest is at issue here because the Due Process Clause, by itself, does not confer a liberty interest when the state actions at issue are authorized by the sentence imposed, *i.e.*, the incarceration of an inmate for the lifetime duration of his custodial sentence. *See Sandin v. Conner*, 515 U.S. 472, 480 (1995). Therefore, Raxon relies on state law — the SOMB's Standards and Guidelines[4] and

---

[4] Because Raxon referred to the Standards and Guidelines, and they are central his claims, they may be considered under a Rule 12(b)(6) motion. "When a document is referred to in the complaint and is central to the plaintiff's claim, the court has discretion to consider the document as part of the pleadings." *U.S. Olympic Comm. v. Amer.*

5

SOLSA itself — to support the notion that he has a liberty interest in immediately entering the SOTMP. (*See* ECF No. 9 at ¶¶ 19, 29-30, 41-43, 59, 76-66, 85).

But Raxon's reliance on SOMB's Standards and Guidelines is unavailing. They do not create a liberty interest for CDOC inmates. In fact, by their terms, they *cannot* create a legitimate claim of entitlement to timely admission to the SOTMP because the SOTMP is operated by CDOC, not the SOMB. The Standards and Guidelines expressly state that "the SOMB does not have purview over other entities involved in the supervision of defendants convicted of a sexual offense (for example, probation, parole, and the judiciary), [but] it offers these guidelines as a tool to assist in the management of offenders[,] to enhance collaboration among stakeholders[,] and to provide guidance on best practices." *See Standards and Guidelines for the Assessment, Evaluation, Treatment, and Behavioral Monitoring of Adult Sex Offenders*, p. 4. Thus, the Standards and Guidelines are not legally binding on other criminal justice agencies, including CDOC, and cannot create an entitlement for prisoners. *See Bertolo v. Shain*, No. 17-cv-00773-RM-KLM, 2020 WL 2365245, at *5 (D. Colo. Feb. 27, 2020) (holding, in part, that SOMB does not have enforcement authority over the SOTMP), *report and recommend. adopted*, 2020 WL 1502295.

---

*Media, Inc.*, 156 F. Supp. 2d 1200, 1204 (D. Colo. 2001) (citing *Prager v. LaFaver*, 180 F.3d 1185, 1188-89 (10th Cir. 1999)). The Guidelines may be found online at https://efaidnbmnnnibpcajpcglclefindmkaj/https://dcj.colorado.gov/sites/dcj/files/documents/branded_adult_standards_november_2023.pdf.

By contrast, the question of whether SOLSA creates a liberty interest in immediate admission to the SOTMP is more nuanced. *Allen*, 930 F. Supp. 2d at 1265 (stating that when evaluating whether a liberty interest exists, the Court's assessment should account for the totality of conditions). Two principles anchor the analysis. First, a state-created liberty interest arises only when a restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" or amounts to a "grievous loss." *Beebe v. Heil*, 333 F. Supp.2d 1011, 1016-17 (D. Colo. 2004) (quoting *Sandin*, 515 U.S. at 484 and *Wolff v. McDonnell*, 4318 U.S. 539, 572 n.19 (1974)). Second, when evaluating whether an inmate has suffered a "grievous loss" because his expectation of meaningful eligibility for parole is delayed, the Court should look to the parole statute's "language and structure" and determine whether it so limits the discretion of the parole board that an entitlement arises. *Boutwell v. Keating*, 399 F.3d 1203, 1213 (10th Cir. 2005); *see also McDaniel v. Dauffenbach*, No. 20-cv-02033-DDD-KLM, 2023 WL 4908370, at *3 (D. Colo. Feb. 3., 2023) (relying on *Boutwell*, and distinguishing parole statutes in other states).

Following this two-part framework, another Judge in this District ruled that inmates do not have a liberty interest in completing treatment before their minimum sentence expires. *Firth v. Shoemaker*, No. 09-cv-00224-MSK-MJW, 2010 WL 882505, at *5 (D. Colo. Mar. 8, 2010) (*Firth I*), *aff'd*, 496 F. App'x 778, 788-90 (10th Cir. 2012) (*Firth III*). This is so because SOLSA does not identify any time by which treatment must be completed. *Id.* at *5. Accordingly, per AR 700-19, CDOC has considerable discretion

to allocate the SOTMP's limited resources as it sees fit,[5] and although AR 700-19(IV)(F)(1) identifies relevant factors, it does not mandate that any factor be given decisive weight or that treatment be completed at definite time. *Id.*; *Firth I*, 2010 WL 882505, at *6.

Further, given that SOLSA inmates have indefinite sentences, another Judge in this District recognized that inmates who have been admitted to the SOTMP have no cognizable liberty interest in *successfully progressing* in treatment, because they are not entitled to be meaningfully eligible for release at a particular time. *Bertolo,* 2020 WL2365245, at * 9 ("Even if Plaintiff's parole eligibility were denied as alleged, he would not have lost anything he was entitled to since '[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence.'") (quoting *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex,* 442 U.S. 1, 7 (1979)).

Finally, in *McDaniel*, 2023 WL 4908370, at *2-4, a different Judge in this District recognized that SOLSA inmates have no liberty interest in admission to treatment even if treatment has been delayed years past their minimum sentence. Under the relevant parole statute, admission to treatment does not create a presumption that a SOLSA inmate should be paroled; the State Board of Parole retains complete discretion over his fate, so no legitimate expectation related to consideration for parole arises. *Id.* at *3.

---

[5] AR 700-19 has been amended since *Firth I* was decided, but it was not amended in a manner that reduces CDOC staff's discretion to allocate SOTMP resources, so *Firth I* remains persuasive on these issues.

8

On the other hand, a Judge in this District determined that once an inmate is admitted to treatment, he has a limited liberty interest in staying there. *Beebe v. Heil*, 333 F. Supp.2d 1011, 1017-18 (D. Colo. 2004) (an inmate who is already in treatment has an interest sufficient to require some formal processes before treatment is terminated); *see also Firth v. Shoemaker*, No. 09-cv-00224-MSK-MJW, 2011 WL 4501971 (D. Colo. Sept. 29, 2011) (*Firth II*) (noting that termination from the SOTMP requires a "modest suite" of procedural protections), *aff'd*, *Firth III* at 785-88. And in *Tillery v. Raemisch*, a Judge in this District considered whether a liberty interest plausibly arose from the plaintiff's allegation that he was indefinitely deprived of treatment due to his assignment to a facility that did not offer it. No. 16-cv-0282-WJM-STV, 2017 WL 217816, at *2 (D. Colo. Jan. 18, 2017) (*Tillery I*). The Court determined that a complete deprivation of treatment would trigger a liberty interest. *Id.* at *6-7. Later, upon consideration of summary judgment, the *Tillery* court held that where an inmate is awaiting treatment, and there is evidence he will never get it, a liberty interest may arise. *Tillery v. Raemisch*, 2018 WL 4777411, at *6-8 (D. Colo. Oct. 3, 2018) (*Tillery II*).

It is important to note that the interest recognized in *Tillery I and II* was narrowly drawn. *Tillery* recognized only an interest in admission to the SOTMP "within a reasonable period of time" based on multiple factors. *Tillery II*, 2018 WL 4777411, at *9. The *Tillery* Court *did not* identify a right to immediate admission to the SOTMP upon eligibility; and it declined to order CDOC to admit Mr. Tillery to the SOTMP even though, at the time of its summary judgment order, he was sixteen months past his PED. *Id.* at

*1, 9 (noting that plaintiff assumed that the outcome of any process would "provide him with prompt access to the SOTMP . . . . This is not so.").

Later, in *Wismer v. Stancil*, No. 22-cv-3217-WJM-SKC, 2023 WL 7279355 (D. Colo. Nov. 3, 2023), a Judge in this District concluded that although Mr. Wismer had been eligible for treatment for three years and had not yet been admitted, *id.* at *1, he suffered no "grievous loss" because he had alleged only that treatment was delayed, not foreclosed. *Id.* at *5. The *Wismer* Court distinguished *Beebe* as focused on termination from treatment, not delay, and it distinguished *Tillery*, and a similar case, *Lerner v. Stancil,* No. 22-cv-0088-NYW-NRN, 2023 WL 3595998 (D. Colo. May 23, 2023), as cases that forbade complete denial of treatment, *not* delayed treatment. *Wismer*, 2023 WL 7279355, at *5-6 (citing *McDaniel* with approval).

In this case, as in *Wismer*, Raxon alleged only that he was placed on the GRL and told he must wait his turn although he has repeatedly requested treatment and offered to pay for it. He just reached his PED last month and has not even served the full term of his minimum sentence. Thus, the liberty interest he relies on is an interest in avoiding delay, not an interest arising from a total denial of treatment. In short, Raxon's claim is a *Wismer*/*McDaniel*-type claim, not a *Beebe*, *Tillery*, or *Lerner* claim. For this reason alone, Raxon's due process claims fail, and the analysis can end there.

II. **Even assuming that Raxon has a liberty interest in immediate admission to the SOTMP, his procedural due process claim fails because he has not identified any procedures that were due but were not provided.**

Even assuming that this Court finds that Raxon has a liberty interest in immediately accessing treatment, to state a procedural due process claim, a plaintiff

10

must include allegations in the operative complaint that would allow the reviewing court to consider (1) whether he has a private interest that was affected by official action(s); (2) "the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) the benefits and burdens of mandating different procedures. *Allen*, 930 F. Supp. 2d at 1269 (quoting *McMillan v. Wiley*, 813 F. Supp. 2d 1238, 1249 (D. Colo. 2011)). To allow the Court to consider the second factor, Raxon must describe how the procedures used were deficient or explain how the defendants failed to follow proper procedures. *Id.* If he does not do so, he has not stated a claim. *Id.*

In this case, Raxon did not identify any process that was due but was not provided. He chronicled a series of letters that he sent to various defendants asking for treatment. (ECF No. 9 at ¶¶ 79-98). He also noted that he sent grievances that were denied by Retting and Ensinger. (*Id.* at ¶¶ 60-62, 124, 141). He further alleged that Defendant Retting responded to a February 4, 2025, letter he sent that was a "formal request for treatment," but she denied it; a denial he alleged (in conclusory fashion) that Ensinger and Turner participated in. (*Id.* at ¶¶ 122-123, 139-40, 156-57).

Raxon additionally alleged that he asked for permission to pay for treatment through an outside provider pursuant to AR 700-21, but Defendants denied his request. (*Id.* at ¶¶ 85-86). However, he did not provide any facts to support the bare assertion that Defendants did not follow that regulation. (*Id.*). AR 700-21(IV)(B)(1) provides that inmates may apply for permission to obtain treatment from an outside provider, but it also notes that the request may be denied by the "chief of behavioral health services"

11

due to, inter alia, lack of staff or security risks. *Id.* Raxon did not explain why or if the chief of behavioral health (who has not been named here) declined his request. Further, he did not allege that, even assuming the request was approved, the private provider he wished to use submitted the forms required under AR 700-21(IV)(B)(2)(b)-(c) to complete CDOC's payment and credentialing requirements. Therefore, Raxon did not plausibly allege that he and his provider followed the procedures outlined in the regulation, but CDOC failed to properly respond.

Finally, Raxon relied on the Colorado Open Records Act and the Colorado Criminal Justice Records Act to assert that Defendants should have given him information about his risk assessments. (ECF No. 9 at ¶¶ 90, 96-98). But he admitted that CDOC denied this request because it was deemed "not in the public interest" pursuant to section 24-72-305(5), C.R.S. (ECF No. 9 at ¶ 90). He did not explain why this process was inadequate. (*Id.*); *see also* § 24-72-304. C.R.S. (allowing disclosure of criminal justice records, "except as otherwise provided by law").

In sum, Raxon admitted that his requests for treatment and information were received, and he was afforded the right to be heard by members of the SOTMP staff, the grievance staff, and the chief of behavioral health. He also received written responses to many of his missives. Given those facts, he did not explain what additional procedures were due, nor did he specify how CDOC's review processes fell short. He has not adequately pleaded a procedural due process claim.

> **III. Even assuming that Raxon has a liberty interest in immediate admission to the SOTMP, he failed to state a substantive due process claim because he did not provide factual support for the assertion that Defendants totally denied him treatment.**

To state a substantive due process claim, a plaintiff must factually support the assertion that Defendants violated the Fourteenth Amendment's "substantive guarantee . . . against conduct by state . . . officials that 'shocks the conscience'" *Allen*, 930 F. Supp. 2d at 1269 (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1985)). He must do more than show that government actors intentionally or recklessly caused injury. *Wismer*, 2023 WL 7279355, at *6 (citation omitted). He must "demonstrate . . . outrageousness and . . . potential harm that is truly conscience shocking." *Id.*

To support his substantive due process claim, Raxon alleged that Defendants completely deprived him of access to the SOTMP without any penological justification. (ECF No. 9 at ¶ 182). In support of that assertion, he relied on the skeletal allegation that Defendants failed to prioritize inmates on the GRL as required by AR 700-19(IV)(F)(1) and pursuant to 16-11.7-105(1), C.R.S. (mandating that all sex offenders undergo treatment). (ECF No. 9 at ¶¶ 102, 116, 131, 148). This assertion is entirely conclusory, and therefore not entitled to an assumption of truth, because Raxon did not set forth any facts from which this Court could infer that Defendants have mismanaged the GRL. *See Amedei*, 867 F.3d at 1185 (conclusory allegations are not sufficient). His allegations only support the assertion that Defendants have required him to wait a period of years for treatment. (*Id.* at ¶¶ 79-98). This delay is not sufficient to state a

13

substantive due process claim. *Wismer*, 2023 WL 7279355, at *7-8; *McDaniel*, 2023 WL 4908370, at *3-4.[6]

### IV. Raxon did not state any facts from which this Court could infer there is a risk of objective harm stemming from deliberate indifference, so failed to state any Eighth Amendment claim.

To state a plausible Eighth Amendment claim, a plaintiff must allege facts that might demonstrate that he was subjected to objectively severe harm, and Defendants were "subjectively aware of 'a substantial risk of serious harm' and yet voluntarily acted, or failed to act, despite that awareness." *Allen*, 930 F. Supp. 2d at 1262 (quoting *Farmer v. Brennan*, 511 U.S. 825, 842 (1994)).

Raxon's Eighth Amendment claim rests on allegations that he "suffers from stress related lowered immunity which has led to repeated bouts of COVID-19, Nor[o]virus, flu, and long-term COVID. In addition, [he allegedly] suffers anxiety, depression, insomnia, migraine headaches, night terrors, hopelessness, helplessness, and other illness attributable to" his confinement. (ECF No. 9 at 5).

But the allegation that CDOC staff arbitrarily denied sex offenders access to SOTMP, causing emotional distress and triggering secondary physical disease, is too vague and speculative to support the assertion that Raxon suffered an objectively serious injury. *Allen*, 930 F. Supp. 2d at 1263. And to the extent that Raxon intended to

---

[6] Raxon also alleged that Defendants breached his plea agreement since he bargained for treatment, but he does not connect that allegation to any particular claim, so no specific and thorough response is possible. (ECF No. 9 at ¶¶ 108, 121, 138, 155). In any event, any challenge to a plea agreement, and the resulting sentence, is barred by the rule articulated in *Heck v. Humphrey*, 512 U.S. 477 (1994) (barring claims that cast doubt on the underlying conviction and sentence).

allege that uncertainty about the date he will be paroled caused psychological harm, such anxiety is not serious enough to support an Eighth Amendment claim. *Id.* at 1263-64. Anxiety and lowered immunity are not the type of threats to physical or mental well-being that the Eighth Amendment prohibits. *Id.* (citing *Battle v. Anderson*, 564 F.2d 388, 403 (10th Cir. 1977)); *see also Diaz v. Lampela*, 601 F. App'x 670, 675 (10th Cir. 2015) (The Court has rejected the notion that when a psychological condition could impact parole, the Eighth Amendment mandates treatment).

In addition, Raxon did not allege any facts to support his bare assertion that Defendants acted with deliberate indifference. He simply alleged that he is on the GRL, he has not been admitted to treatment, and he unsuccessfully requested private-pay treatment. (ECF No. 9 at ¶¶ 79-98). These allegations do not support the idea that Defendants were deliberately indifferent. *McDaniel*, 2023 WL 4908370, at *4-5.

## V. Defendants are entitled to qualified immunity in their individual capacities.

Public employees acting in their individual capacities are presumed to be immune from liability. *Schalk v. Gallemore*, 906 F.2d 491, 499 (10th Cir. 1990). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Once the defendant asserts qualified immunity, the burden shifts to the plaintiff to show that granting qualified immunity is not appropriate. *Davis v. Scherer*, 468 U.S. 183, 197 (1984); *DeSpain v. Uphoff*, 264 F.3d 965, 971 (10th Cir. 2001). The plaintiff must demonstrate that (1) the defendants violated a constitutional right, and (2) the right was clearly established at the time of the violation. *Brosseau v. Haugen*, 543 U.S. 194, 195 (2004). "If the Plaintiff fails

to satisfy either part of the two-part inquiry, the court must grant the defendants qualified immunity." *Gross v. Pirtle*, 245 F.3d 1151, 1156 (10th Cir. 2001).

The Supreme Court explained that "[a] Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would [have understood] that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 740 (2011) (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). In this case, as explained above, Raxon did not plausibly allege that Defendants violated a constitutional right. Thus, he has not met the first prong of the analysis. *Montoya v. Vigil*, 898 F.3d 1056, 1064 (10th Cir. 2018) ("It is true that if the plaintiff failed to state a claim under Rule 12(b)(6), the government would also be entitled to qualified immunity."). Further, based on precedent available at the time Raxon was told he would have to wait for treatment, Defendants would not have been on notice that delaying treatment clearly violated the Constitution. *Wismer*, 2023 WL 7279355, at *7-8; *McDaniel*, 2023 WL 4908370, at *3-5. Therefore, they are entitled to qualified immunity in their individual capacities.

WHEREFORE, Defendants move this Court to dismiss all claims against them.

DATED at Denver, Colorado this December 11, 2025.

PHILIP J. WEISER
Attorney General

*s/ Amy E. Adams*
AMY E. ADAMS*
MARK C. LOCKEFEER*
Assistant Attorneys General
Colorado Department of Law

16

1300 Broadway, 10th Floor  
Denver, Colorado 80203  
Telephone: 720-508-6000  
E-Mail: amy.adams@coag.gov  
mark.lockefeer@coag.gov  
*Counsel of Record

## CERTIFICATE OF SERVICE

This is to certify that I have duly served the within DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT (ECF NO. 9) on all parties herein by e-filing with the CM/ECF system maintained by the court on December 11, 2025, and by depositing same in the United States mail, postage prepaid, at Denver, Colorado, on December 12, 2025, addressed as follows:

| | |
|---|---|
| Mario Raxon, #164455<br>Colorado Territorial Correctional Facility<br>PO BOX 1010<br>Canon City, CO 81215-1010<br>*Plaintiff Pro Se* | *Courtesy copy e-mailed to:*<br>Anthony DeCesaro, CDOC |

*s/Brittany Vigil*